# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CURTIS CLARK,<br><br>        Plaintiff,<br><br>        vs.<br><br>PRUDENTIAL INSURANCE<br>COMPANY OF AMERICA; and DOES<br>1 through 10, inclusive.<br><br>        Defendant. | **Case No. CV 08-0865 GAF (PJWx)**<br><br>MEMORANDUM & ORDER<br>REGARDING MOTION FOR<br>SUMMARY JUDGMENT |

## I. INTRODUCTION

Plaintiff Curtis Clark was employed by Defendant Prudential Insurance Company as a common law insurance agent for over twenty-three years. Clark's union entered into a Reduction In Force Agreement ("RIF") with Prudential in late 2004 that eliminated Clark's position, which was the position of Prudential Representative a/k/a "common law agent," effective December 31, 2006. The RIF provided that retirement eligible employees who met certain contract continuation requirements would be granted an Emeritus Contract. (See LaVista Decl., Ex. A [RIF] at 60-61.) Clark was not eligible for retirement because he did not meet the age requirement of turning 50 by December 31, 2006 or within six months thereafter. Clark admits he was aware in June 2005 that he did not meet the retirement eligibility requirement. (Clark Decl. ¶ 5.) On June 7, 2005, a year and a half before his position was eliminated, Clark sent an email to management requesting assistance in "grandfathering" him into the Emeritus Agent's

contract program. He wrote, "[b]ased on the union negotiated contract with Prudential, I will miss the cutoff/bridge date by 3 months of service." (Id.) Clark was informed three weeks later that an exception could not be granted. (LaVista Decl. ¶ 5, Ex. C.) On December 31, 2006, Clark's position was eliminated.

Ten days before his employment was terminated, Clark took disability leave. When he returned six months later, he was reminded that his position had been eliminated in the RIF. Clark then filed this employment discrimination lawsuit claiming he is the victim of racial and gender discrimination. He sues Prudential for terminating his employment, and also names Anthony LaVista, the Human Resources officer who delivered the bad news. Clark argues his eligibility should be determined as of June 2007 instead of December 31, 2006 – despite the clear language of the RIF – because that is the date on which Clark returned from disability leave and was reminded that his job had been eliminated. He also argues that Prudential made an exception for Jeri Zimmer, a Caucasian female, who Clark claims did not meet the eligibility requirements. Accordingly, Clark's employment discrimination theory is that Prudential did not grant an Emeritus Contract to him, a black male, despite his alleged entitlement thereto, but made a special exception to grant one to Zimmer, a female Caucasion, despite her alleged lack of eligibility.

Prudential has moved for summary judgment, contending Clark cannot make out a prima facie case of discrimination because the undisputed facts show that Clark was not eligible for the Emeritus Contract and Zimmer was eligible. The Court agrees. Prudential is entitled to summary judgment of non-discrimination. As explained below, the motion for summary judgment is **GRANTED**.

## II. BACKGROUND

Clark was a member of the Office and Professional Employees International Union ("OPEIU") Local 153 and his employment with Prudential was governed by the collective bargaining agreement ("CBA") between the OPEIU and Prudential. (Statement of Undisputed Fact ("SUF") 2, 4.) In September 2004, the OPEIU sent a

letter to the membership which referenced the December 31, 2006 transition of Prudential Representatives into Independent Contractor status. (Menzie Decl., Ex. B [Clark Depo., Ex. 43].) The letter explained that "Emeritus contracts will be offered to all eligible Representatives who reach 50/20, 55/10, and 65."[1] (Id.) The letter did not explain how the years of service were determined. It did not state that the 20 years of service must be continuous and it did not state that only years of service as an agent would be counted. (See id.)

On October 8, 2004, the OPEIU entered into a new CBA agreement with Prudential on behalf of its members, which included an RIF. (SUF 3, 5.) Under the RIF, Clark's position, that of common law agent, was eliminated effective December 31, 2006. (SUF 5.) The RIF provided that certain employees would be granted an Emeritus Contract if they met certain eligibility requirements, including: (a) being retirement eligible, e.g., reaching age 50 by December 31, 2006 or within six months thereafter and completing twenty years of service; and (b) compliance with the contract continuation requirements. (See LaVista Decl., Ex. A [RIF] at 60-61.)

The 2006 contract continuation requirements were announced in a November 22, 2005 Field Alert, which was emailed to all common law agents. (SUF 31.) The Field Alert explained that there were two ways an agent could meet the contract continuation requirements: an agent could achieve a combined production level of $26,000 in Net First Year Commission Credits ("NFYCCs"), or exercise the Alternate Requirement Option ("ARO"), which is available to an agent once every three years. (SUF 32.) "To qualify for the ARO, a producer's total proprietary NFYCCs for 2006 and the four preceding calendar years must be at least $130,000." (Id.; LaVista Decl.,

---

[1] The first number, which appears before the forward slash, refers to age and the second number refers to years of service.

Ex. E.)  Clark testified he did not receive the Field Alert and he does not consider it binding.[2]  (Clark Decl. ¶¶ 14, 15.)

Though the RIF itself does not expressly reference the Field Alert or the ARO, (LaVista Decl., Ex. A.), it unambiguously states that an employee must meet the applicable contract continuation requirements which were regularly published in the Field Alert.  When the RIF was executed, the 2006 contract continuation requirements had not been issued.

A. CLARK'S INELIGIBILITY

Under the plain language of the RIF, Clark had to be within six months of 50 years old by December 31, 2006 to qualify for an Emeritus Contract.  (SUF 7.)  It is undisputed that Clark was born on September 10, 1957.  He did not attain 50 years of age until September 10, 2007, nine months after December 31, 2006, or three months too late to qualify.  (SUF 8.)  Clark admitted in a June 7, 2005 email that, "[b]ased on the union negotiated contract with Prudential, I will miss the cutoff/bridge date by 3 months of service.  At that time I will be 49 years, and 9 months old!!!"  (SUF 9.)  In a June 29, 2005 letter, Anthony LaVista, Prudential's Director of Labor and Employee Relations, responded to Clark's email by stating:

> Based on the negotiated terms of the Collective Bargaining Agreement/ Reduction In Force Agreement between Prudential and the Office and professional Employees International Union, a Common Law agent, who is within six months of a retirement eligible milestone status, will be bridged in order to meet the retirement eligibility requirements and be offered an Emeritus Contract.  **Please understand that Prudential is contractually obligated to adhere to the terms of the Collective Bargaining Agreement, therefore, an exception to grandfather you into the Emeritus Agent program cannot be granted.**"

---

[2]Clark contends "[t]he Field Alert is not part of the CBA and RIF Agreement and was not signed by any union representative.  It is a unilateral document purportedly issued by Prudential which is not binding on any of the agents represented by the OPEIU."  (Clark Decl. ¶ 15.)

4

(SUF 10 (emphasis added).)  Two years later, after his position had already been eliminated, Clark again attempted to obtain an Emeritus Contract.  (See LaVista Decl., Ex. D.)  Clark sent an email to Anthony LaVista on June 21, 2007, which stated:

> I am currently disabled, and on disability, which begin [sic] 12/21/06.  I am notifying you that on September 10th, 2007, I will be 50 years of age, with 23 years, and 110 days of work service with Prudential.  Currently, I am within the 6 month bridge retirement eligibility milestone under the collective bargaining agreement that Prudential was contractually obligated to adhere to which makes me eligible for the emeritus agent's contract upon my being satisfactory [sic] medically released by my doctor from disability.
>
> As of today, June 21st, 2007, whenever I am satisfactory [sic] medically released by my doctor to be able to return to work, and fully perform the duties of the job.  I would like for my employment contract with Prudential to be a [sic] emeritus agent's contract, seeing that there is no longer a common law agent's contract available which was the contract that I was working within upon becoming disabled.

(Id.)  LaVista replied that according to the RIF, Clark was beyond the bridging period and ineligible for an Emeritus Agent Contract because he would not turn fifty until eight months and ten days after the December eligibility date.  (Id.)

Clark continued emailing LaVista and persisted in requesting an Emeritus Contract.  He threatened litigation and to alert the media, protesting that Jeri Zimmer, whom he alleged did not meet the contract continuation requirement or years of service requirement, received an Emeritus Contract and he did not.  (LaVista Decl., Ex. F.)  On June 26, 2007, LaVista responded to Clark's email and explained that there were several ways to meet the contract continuation requirement, including meeting the ARO.  (Id.)  He also explained that Clark met the contract continuation and had the necessary years of service, but did not meet the age requirements for the 50/20 early retirement benefit.  (Id.)

B.  ZIMMER'S ELIGIBILITY

Clark contends that Prudential offered an Emeritus Contract to a caucasian woman, Jerri Zimmer, who was not eligible because she did not meet two of the three

requirements. (Clark Decl. ¶¶ 2, 12–14.) Clark contends age is the only requirement Zimmer met, because she had not completed twenty years of service *as a common law insurance agent* and she did not meet the 2006 contract continuation requirements.

Prudential hired Zimmer as a Service Representative on June 14, 1982. (SUF 22.) She was employed in that capacity until March 31, 1989. (SUF 23; Zimmer Decl. ¶ 2.) Zimmer left Prudential for a two year period and was rehired as an insurance agent on February 25, 1991. (See Zimmer Decl. ¶ 2; Campbell Decl., Ex. 3.) In a letter dated November 18, 1991, Prudential informed Zimmer that she had been granted continuous service regarding her previous employment from June 14, 1982 through March 31, 1989, and that her absence from April 1, 1989 through February 24, 1991 would not be considered a break in service, but also would not count as service time for benefits purposes. To accommodate this policy, the company adjusted her service date to May 8, 1984. (SUF 23.) Contributions that Zimmer made to her Prudential retirement account are consistent with the dates set forth in the November 18, 1991 letter granting her continuous service and an adjusted service date of May 8, 1984. (SUF 25.)

Representatives of Prudential attested that Prudential routinely grants continuous service and an adjusted service date to anyone who returns to Prudential after an absence that is shorter than their previous period of employment. (SUF 26.) Such decisions are made in the normal course of business at the corporate level without any request by the person being granted continuous service and an adjusted service date. (SUF 27.) Thus, based on her adjusted service date of May 8, 1984, Zimmer had completed over twenty-two years of service to Prudential on December 31, 2006.

With respect to the 2006 contract continuation requirements, Zimmer did not meet the $26,000 requirement for 2006. (Zimmer Decl., Ex. C at Bates PRU02144.) However, Zimmer had never used the ARO before, so it was available to her in 2006. (SUF 34, 36.) Zimmer's NFYCCs for 2006 and the four preceding years totaled

$135,590.55. (SUF 36.) Thus, Zimmer met the ARO of $130,000 for 2006 and the four preceding years.

C. CLARK'S LEGAL ACTION

On July 13, 2007, Clark filed a charge with the California Department of Fair Employment and Housing ("DFEH") alleging discrimination. (Menzie Decl., Ex. A at 13.) On July 18, 2007, the DFEH referred the complaint to the United States Equal Employment Opportunity Commission ("EEOC") for investigation and issued its own DFEH right-to-sue letter. (Id. at 12.) Clark filed suit in state court on January 3, 2008, after which the EEOC dismissed Clark's charge. (Id. at 1.)

Clark's lawsuit, which was removed to federal court, alleges disparate treatment based on race and gender in violation of California's Fair Employment and Housing Act ("FEHA") and Title VII. He requests punitive damages because he claims Prudential employee Anthony LaVista acted with oppression, fraud and malice in his discrimination against Clark.

**III. DISCUSSION**

Prudential filed a motion for summary judgment on the ground that Clark cannot carry his burden to establish a prima facie case of unlawful race or gender discrimination under the undisputed facts in this case. The Court agrees that Clark cannot establish a prima facie case of discrimination. Furthermore, even if he could, Prudential had a legitimate, non-discriminatory reason for denying him an Emeritus Contract because he did not meet the unambiguous age qualification. Thus, for the reasons outlined below, the Court **GRANTS** the motion for summary judgment.

A. SUMMARY JUDGMENT STANDARD

Summary judgment should be granted where there is "no genuine issue of material fact" and the moving party is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A defendant meets its burden on summary judgment merely by pointing to an absence of evidence supporting an essential element of the plaintiff's claim. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Thus, Prudential need not

7

affirmatively negate Clark's claims or even present any evidence at all.  Id. at 323.

Clark may not escape summary judgment by relying on pleadings or conclusory

statements and attacking or discrediting Prudential's evidence; rather, he must

affirmatively present specific and admissible evidence sufficient to enable a reasonable

trier of fact to find in his favor.  Fed. R. Civ. P. 56(e); Anderson v. Liberty Lobby, Inc.,

477 U.S. 242, 252 (1986); National Union Fire Ins. Co. v. Argonaut Ins. Co., 701 F. 2d

95, 97 (9th Cir. 1983).

B.  APPLICABLE EMPLOYMENT LAW

Title VII states, "[i]t shall be an unlawful employment practice for an employer

to fail or refuse to hire or to discharge any individual or otherwise to discriminate

against any individual with respect to his compensation, terms, conditions, or privileges

of employment, because of such individual's race [or] sex."  42 U.S.C. §

2000(e)-2(a)(1).  Similarly, FEHA states, "[i]t shall be an unlawful employment

practice . . . [f]or an employer, because of the race [or] sex . . . of any person, to refuse

to hire or employ the person . . . or to bar or to discharge the person from employment

. . . or to discriminate against the person in compensation or in terms, conditions, or

privileges of employment."  Cal. Gov't Code § 12940(a).  "Because of the similarity

between state and federal employment discrimination laws, California courts look to

pertinent federal precedent when applying [California] statutes.  In particular, California

has adopted the three-stage burden shifting test established by the United States

Supreme Court for trying claims of discrimination."  Guz v. Bechtel Nat'l, Inc., 24 Cal.

4th 317, 354 (2000) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973));

Ming W. Chin et al., CALIFORNIA PRACTICE GUIDE: EMPLOYMENT LITIGATION §§

7:2-7:12 (Rutter Group 2007) (hereinafter, "The Rutter Guide").

Under federal and California law, Clark bears the initial burden of establishing a

prima facie case of discrimination.  McDonnell Douglas, 411 U.S. at 802-04; Guz, 24

Cal. 4th at 353-55.  Specifically, Clark must show that: (1) he belongs to a protected

class; (2) he was qualified for the Emeritus Contract on which all of his claims are

8

based; (3) he was denied the Emeritus Contract despite his qualifications; and (4) a less qualified person outside the protected class received an Emeritus Contract. McDonnell Douglas, 411 U.S. at 802; St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993); Leong v. Potter, 347 F.3d 1117, 1124 (9th Cir. 2003) (affirming summary judgment for employer regarding race and sex discrimination because plaintiff lacked evidence others were treated more favorably, and employer's reason for termination was non-discriminatory and not shown to be pretextual).  If Clark establishes a prima facie case of discrimination, Prudential then has the opportunity "to *articulate* (not to prove) a legitimate nondiscriminatory reason" for denying Clark an Emeritus Contract.  The Rutter Guide, § 7:415 (emphasis in original) (citing Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 254-55 (1981); Guz, 24 Cal. 4th at 355-56).  Once Prudential articulates any legitimate reason Clark did not receive an Emeritus Contract other than his race or gender, any presumption of discrimination disappears.  St. Mary's Honor Ctr., 509 U.S. at 510-11; Guz, 24 Cal. 4th at 355-56; The Rutter Guide, § 7:416 (citing Board of Trustees v. Sweeney, 439 U.S. 24, 25 (1978)).

To escape summary judgment, Clark then must carry the heavier burden of proving by specific and substantial evidence that Prudential's reason was a pretext, such that he would have received the Emeritus Contract but for his race or gender.  Stegall v. Citadel Broadcasting Co., 350 F.3d 1061, 1066-67 (9th Cir. 2003) (specific and substantial evidence of pretext required to escape summary judgment); Godwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1222 (9th Cir. 1998) (same); Guz, 24 Cal. 4th at 353-56; Le Bourgeois v. Fireplace Mfr., Inc., 68 Cal. App. 4th 1049, 1061 (1998) (affirming summary judgment for employer because plaintiff failed to provide substantial evidence that employer's decision was pretextual).  Establishing a prima facie case and simply disputing Prudential's stated reason is not sufficient.  Wallis v. J.R. Simplot Co., 26 F.3d 885, 890 (9th Cir. 1994) (affirming summary judgment for employer despite prima facie case of discrimination because plaintiff lacked evidence to refute employer's legitimate nondiscriminatory reason); Guz, 24 Cal. 4th at 352-56; Horn v. Cushman &

Wakefield Western, Inc., 72 Cal. App. 4th 798, 807 (1999) (plaintiff must offer more than subjective belief and speculative evidence). Clark must prove by *specific and substantial evidence* that Prudential denied him an Emeritus Contract because of his race or gender. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000) (employee must show decision was motivated by intentional discrimination); Hazen Paper Co. v. Biggins, 507 U.S. 604, 610 (1993) (protected trait must have had "determinative influence on the outcome."); Thompson v. Holy Family Hosp., 121 F.3d 537, 540 (9th Cir. 1997) (conclusory allegations insufficient); Moore v. Home Ins. Co., 601 F.2d 1072, 1075 (9th Cir. 1979) ("[Plaintiff's] suspicion of improper motives, unsupported by stronger evidence, is insufficient to raise an issue of fact."); Guz, 24 Cal. 4th at 325, 360-61 ("[C]ourts are not free to second-guess an employer's business judgment [and] there must be evidence . . . that intentional discrimination . . . was the true cause of the employer's actions."). Although the foregoing analysis often is described in terms of "burden shifting," the "ultimate burden" of proving "that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." The Rutter Guide, § 7:349 (quoting Texas Dept. of Community Affairs, 450 U.S. at 253). "Summary judgment . . . provides a particularly suitable means to test the sufficiency of the plaintiff's prima facie case and/or of the defendant's nondiscriminatory motives for the employment decision." Caldwell v. Paramount Unified Sch. Dist., 41 Cal. App. 4th 189, 202-05 (1995)

C. ANALYSIS

Clark's claims fail because he cannot establish a prima facie case of discrimination on the basis of race or gender. The undisputed facts show that Clark did not qualify and Zimmer did qualify for an Emeritus Contract.

1. CLARK DID NOT QUALIFY FOR AN EMERITUS CONTRACT.

Clark did not meet the minimum age for retirement eligibility under the RIF and therefore was not qualified for the Emeritus Contract on which all of his claims are based. It is undisputed that Clark was born on September 10, 1957 and was not 50

years old on December 31, 2006 or within six months thereafter.  (SUF 8.)  Clark

contends that Prudential should have measured his age as of July 2007, despite the plain

language of the RIF that requires his age to be measured "as of December 31, 2006,"

which is the effective date negotiated and agreed to by the Union over a year-and-a-half

in advance.  Clark inexplicably believes Prudential should have tolled the December

31st cut-off date while Clark was out on disability leave and should have given him an

extra six months in which to become retirement eligible.  The only bases for Clark's

contention are: (1) that the RIF does not say that the date cannot be tolled on the basis

of disability (Opp. at 7); (2) Prudential did not inform him that he did not make the age

requirement until he attempted to return from disability leave (Opp. at 11); and (3) an

irrelevant and inapplicable provision in the CBA states that the period of time during

which an employee is out on disability leave should be considered when calculating the

employee's years of service if the employee returns to active duty (Opp. at 7).  None of

these arguments holds any weight.

The disability leave provision is completely irrelevant.  It is not Clark's years of

service that were deficient; Clark did not make the age requirement.  LaVista explained

this to Clark in response to Clark's June 22, 2007 email in which Clark asked LaVista

to direct him to any provision in the CBA addressing agents on disability leave at the

time Clark's position was eliminated.  (LaVista Reply Decl. ¶ 5.)  LaVista responded

that the CBA does not address disability status in connection with the RIF, but that

Clark's issue had nothing to do with disability status and instead involved the age

requirement.  (Id.; LaVista Decl., Ex. F.)

With respect to the second argument that Clark was not informed until June

2007 that he did not meet the age qualification, the undisputed facts demonstrate that

this assertion is patently false.  Clark knew in June 2005 that he was not age-eligible

and corresponded with Prudential management at that time, seeking to be grandfathered

in to an agreement for which *he knew he did not qualify*.  (SUF 9-12.)  Moreover,

whether or not Clark knew that he would not be 50 on December 31, 2006 or within six

11

months thereafter has no relevance.  Finally, Clark offers no evidence or legal authority for his assertion that he is entitled to a special extension of the date for determination of age-eligibility merely because the RIF does not expressly prohibit it.

2. ZIMMER DID QUALIFY FOR AN EMERITUS CONTRACT.

The undisputed facts show that Zimmer qualified for an Emeritus Contract based on her over twenty-two years of service, as measured by Prudential in accordance with her adjusted start date *which was adjusted in 1991*.  (SUF 23.)  Clark has no legitimate basis for contending that years of service must be measured by continuous years of service as a common law agent.  Likewise, he has no legitimate basis for contending that the contract continuation requirements necessary to obtain an Emeritus Contract must be different or more stringent than the official 2006 contract continuation requirements established by Prudential in its November 2005 Field Alert.  Clark simply has no evidence to support his contentions.  Prudential, on the other hand, has presented the declarations of LaVista and Burnham, both of whom state that the requirement in the RIF that agents have 20 years of service in order to receive an Emeritus Contract merely required service toward retirement eligibility; the service did not have to be continuous or service as an agent as long as it counted toward retirement.  (Burnham Reply Decl. ¶¶ 2-4; LaVista Reply Decl. ¶ 9.)

Clark contends that eligibility for an Emeritus Contract was governed only by the RIF and the CBA and is limited to their express terms only.  Clark confusingly claims the Field Alert, which set forth the 2006 contract continuation requirements as it does *each and every year*, is not part of the CBA and RIF, was not signed by any Union representative, and should not be considered in determining whether an employee met the contract continuation requirement for the purposes of obtaining an Emeritus Contract.  Thus, Clark stubbornly and inexplicably refuses to recognize the ARO as a legitimate way to satisfy the contract continuation requirements under the RIF.

Clark does not dispute that Zimmer satisfied the ARO; he contends she was not entitled to use the ARO to satisfy the 2006 contract continuation requirements under the

RIF. Although Clark argues that nothing in the RIF explicitly allows use of the ARO, the same argument would apply to the $26,000 commission threshold that ***Clark relies upon*** to argue that he met the contract continuation requirements while arguing Zimmer did not. In fact, the plain language of the RIF that both parties quote and rely upon merely requires that one "meets 2006 contract continuation requirements." (LaVista Decl., Ex. A [RIF at 60].) It does not specify what those requirements are because Prudential announces the new requirements each year through a Field Alert.

Clark cannot impeach the legitimacy of the Field Alert. Clark's claim that he did not receive the Field Alert announcing the 2006 contract continuation requirements and that the Union did not sign off on that Field Alert is a red herring because Prudential sets contract continuation requirements according to its business needs without consent or approval from the Union, and the requirements are binding on all agents regardless of whether they receive this initial announcement. (See LaVista Reply Decl. ¶¶ 6-8; Burnham Reply Decl. ¶¶ 5-6.) In addition, Clark admits that he received Field Alerts about contract continuation requirements in previous years, and the 2006 contract continuation requirements did not change from the previous year.

Clark plainly was not eligible for an Emeritus Contract under the terms and conditions negotiated by his union. The evidence indicates ***he knew he did not qualify***, he sought an exemption from the contractually agreed upon requirements, and even tried to game the system by asserting disability and then arguing the operation of the age requirement was tolled while he was on leave. Clark therefore fails to meet the <u>McDonnell Douglas</u> requirement that he actually be qualified for the position at issue. Moreover, Clark fails to establish that a less qualified person outside the protected class received an Emeritus Contract. Zimmer had over 20 years of service with the company, met the age requirement, and exceeded the ARO minimum. In sum, Clark is unable to

//

//

//

13

establish a prima facie case of discrimination because the undisputed facts show Clark was not eligible for the Emeritus Contract and that Zimmer was eligible.

### IV.  CONCLUSION

For the reasons outlined above, the motion for summary judgment is **GRANTED**.

**IT IS SO ORDERED.**

DATED:  July 14, 2009

_____

Judge Gary Allen Feess
United States District Court